UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT GARDNER,

Plaintiff,

v.

FEDERAL EXPRESS CORPORATION,

Defendant.

Case No. 14-cv-01082-TEH

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the Parties' motions for summary judgment. After carefully considering the Parties' written and oral arguments, the Court hereby GRANTS IN PART AND DENIES IN PART the motions for summary judgment, as set forth below.

**BACKGROUND**

Plaintiff Robert Gardner was a full-time Ramp Transport Driver (RTD) at the Oakland yard facility of Defendant Federal Express Corporation ("FedEx") when he suffered an on-the-job injury to his neck and shoulder on January 30, 2013. Gardner Decl. ¶ 2 (Docket No. 36). On February 6, Gardner was placed on a paid medical leave of absence, during which he reported to FedEx's Human Capital Management Program ("HCMP"), the department that oversees employees on medical leave. Ex. A to Matheis Decl. at 51:2-7 (Gardner Dep.) (Docket No. 37-1). Gardner's case was handled by HCMP Advisor Kathy Cline, and on occasion HCMP Advisor Ramona McMaster. Gardner Decl. ¶ 3.

FedEx Policy 1-8 provides employees with up to 90 days of job-protected medical leave. Ex. 107 to Matheis Decl. (Docket No. 37-4). After the exhaustion of the 90 days of medical leave, a FedEx employee may be "displaced," allowing FedEx to replace the position of the employee on leave or allow the position to remain unfilled. *Id.* Under this

1    policy, Gardner's 90 days of job-protected medical leave was set to expire on May 7, 2013.

2    Ex. D to Matheis Decl. at 45:18-21 (McMaster Dep.) (Docket No. 37-1).  However,

3    Gardner spoke with HCMP advisor McMaster, explaining that he had a doctor's

4    appointment on May 21; his job-protected leave was extended until that date.  McMaster

5    Dep. at 45:24-46:20, 77:3-13.  The May 21, 2013 Work Status Report from Gardner's

6    doctor released him for modified work duty with restrictions on lifting and commercial

7    driving.  Ex. 108 to Matheis Decl. (Docket No. 37-4).  However, the Report left blank the

8    date that Gardner was expected to return to work on full medical discharge.  *Id.*

9        The day after his appointment, Gardner was notified that he had been "displaced"

10   from his position pursuant to Policy 1-8.  Gardner Decl. ¶ 4; Ex. 1 to Gardner Decl.

11   (Docket No. 36).  Gardner remained a FedEx employee and continued with paid medical

12   leave, but he was no longer an Oakland operation employee.

13        In May 2013, FedEx underwent a major reorganization of Air, Ground, and Freight

14   Services operations in response to a downturn in business.  Stations were closed,

15   employees and responsibilities reassigned.  Ex. F to Matheis Decl. at 11:8-12:20, 13:3-

16   17:5, 19:12-19, 21:23-22:7, 61:17-62:6 (Van Galder Dep.) (Docket No. 37-2).  Eight full-

17   time RTDs were transferred into Gardner's former department from another operation.  *Id.*

18   at 17:10-19:2, 20-24, 20:5-21:22, 39:14-21.

19        In early June 2013, after Gardner had been displaced but while he was still on leave,

20   Senior Manager Ron Fraser decided not to replace the positions of employees who were

21   currently on medical leave.  Ex. C to Shukla Decl. at 44:21-45:13 (Fraser Dep.) (Docket

22   No. 36).  On June 10, 2013, Managing Director Robin Van Galder sent an e-mail

23   recapping Fraser's decision; it read in part: "We have four employees that have been out

24   for an excess of 90 Days.  We are not going to replace these employees."  Ex. D to Shukla

25   Decl. (Docket No. 36).

26        In August 2013, Gardner had improved and anticipated a full release to work at his

27   next doctor's appointment on August 30, 2013.  Gardner Decl. ¶ 6.  However, on August

28   26, 2013, Gardner learned from a friend that his former route had been posted on FedEx's

United States District Court
Northern District of California

internal system.  The next day, Gardner contacted his manager, Ken Barker, and told him that he had an appointment on August 30, where he expected to be released to return to work.  *Id.* ¶ 7.  Gardner was released to work by his doctor on August 30, 2013.  Gardner Dep. at 120:20-121:1, 19-123:22; Ex. 36 to Matheis Decl. (Docket No. 37-3).  However, HCMP Advisor McMaster called him and told him not to return to work until he was contacted.  Gardner Decl. ¶ 8.

On September 3, 2013, HCMP Advisor Cline notified Gardner that his position was no longer available.  *Id.* ¶ 9.  She also sent him a letter informing him that he would be on an unpaid leave of absence for 90 days, during which time he could look for another position at FedEx.  Ex. 3 to Gardner Decl. (Docket No. 36).  However, "At the end of this 90-day period," the letter explained, "if no position is found, your employment will be terminated."  *Id.*

During the 90 day unpaid leave period, FedEx sent Gardner weekly job postings, per its policy.  In late 2003, Gardner filed an Equal Employment Opportunity complaint against FedEx.  Van Galder Dep. at 56-59 (Docket No. 48-1).  Thereafter, Gardner claims that he received no full-time, local position for which he was qualified.  Gardner Decl. ¶ 11.  Specifically, he claims he did not receive an October 25, 2013 Bulletin regarding a full-time dispatcher job in Oakland, and a January 17, 2014 Bulletin regarding a full-time RTD job in Oakland.  Ex. B to Matheis Decl. at 213:8-21 (Gardner Dep. II) (Docket No. 37-1); Gardner Dep. at 135:5-10.  However, Gardner was offered four part-time RTD jobs, which he declined.  Gardner Dep. II at 200:17-20.

On February 17, 2014, FedEx terminated Gardner's employment because he had been unable to find another position with the company.  Gardner Decl. ¶ 12.  Gardner filed suit on March 7, 2014.  (Docket No. 1).  The instant motions for summary judgment were filed on May 11, 2015.  (Docket Nos. 33, 35).  The Parties thereafter submitted timely responses and replies.  (Docket Nos. 48-49, 53-54).  The Court heard oral argument on June 29, 2015.

United States District Court
Northern District of California

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247–48.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the non-moving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out that the non-moving party lacks evidence to support its case.  *Id.*  If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion.  *Id.* (quoting *Anderson*, 477 U.S. at 250). The opposing party's evidence must be more than "merely colorable," it must be "significantly probative."  *Id.* at 249–50.  Further, that party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows a genuine issue of material fact exists for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v. Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–1082 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion").

4

1    When deciding a summary judgment motion, a court must view the evidence in the

2    light most favorable to the non-moving party and draw all justifiable inferences in its

3    favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir.

4    2011).  However, in determining whether to grant or deny summary judgment, it is not a

5    court's task "to scour the record in search of a genuine issue of triable fact."  *Keenan v.*

6    *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted).  Rather, a court is

7    entitled to "rely on the nonmoving party to identify with reasonable particularity the

8    evidence that precludes summary judgment."  *Id.*; *Carmen v. San Francisco Unified Sch.*

9    *Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire

10   file for evidence establishing a genuine issue of fact, where the evidence is not set forth in

11   the opposing papers with adequate references so that it could conveniently be found.")

12

## DISCUSSION

## I.    First Cause of Action: Disability Discrimination (Disparate Treatment)

### A.    Legal Standard

16   California's Fair Employment and Housing Act (FEHA) prohibits employment

17   discrimination on the basis of, among other things, physical disability and medical

18   condition.  Cal. Gov.'t Code § 12940(a).  The elements of a prima facie case of disability

19   discrimination in violation of FEHA are: (1) the plaintiff is disabled; (2) the plaintiff can,

20   with or without reasonable accommodation, perform the essential functions of his position;

21   and (3) the defendant subjected the plaintiff to an adverse employment action (4) because

22   of the disability.  *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1246 (2008).

23   Where there is no "direct evidence" of discrimination, California courts analyze

24   disability discrimination claims under the three-stage burden-shifting framework set forth

25   in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 807 (1973).  *Guz v. Bechtel*

26   *Nat'l, Inc.*, 24 Cal. 4th 317, 354–55 (2000); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d

27   267, 270 (9th Cir. 1996).  If a plaintiff succeeds in establishing a prima facie case (step

28   one), the burden of production shifts to the defendant to articulate a legitimate, non-

United States District Court
Northern District of California

5

discriminatory reason for the adverse employment action (step two).  If the defendant does so, the plaintiff moves to step three to demonstrate that the defendant's articulated reason is a pretext for unlawful discrimination "by either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658–59 (9th Cir. 2002) (internal quotations and citations omitted); *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

To establish pretext under step three, very little direct evidence of discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial."  *Id.* at 1222; *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n. 6 (9th Cir. 2006) (merely denying the credibility of defendant's proffered reason for the challenged employment action or relying solely on plaintiff's subjective beliefs that the action was unnecessary are insufficient to show pretext).

## B.    Summary of Parties' Positions

The Parties filed cross-motions for summary judgment on Gardner's cause of action for disparate treatment disability discrimination.

Gardner contends that he was first subjected to discrimination by FedEx when he was displaced from his position after not returning from medical leave within 90 days, pursuant to Policy 1-8.  That policy provides, in pertinent part:

> Positions for employees on medical leave remain available for a minimum of 90 calendar days or expiration of FMLA, whichever is longer.  At the end of 90 days and exhaustion of FMLA, if applicable, the employee's manager may replace the position of the employee on leave or allow the position to remain unfilled.

Ex. 2 to Gardner Decl. (Docket No. 36).  When Gardner was displaced, his employment at FedEx became particularly vulnerable, as his former position was subject to elimination.  Gardner's position was eliminated while he was on leave, and when he returned to work there were no full-time, local RTD positions immediately available.  When he was unable

1    to find a new position within 90 days of his medical release, Gardner's employment was

2    terminated.  Consequently, Gardner argues that his displacement and termination were

3    "because of" his disability and need for medical leave.

4          Regarding whether he could have performed the essential functions of his job with

5    or without accommodation, Gardner contends that FedEx failed to consider the reasonable

6    accommodation of extending his job-protected leave at the time of his displacement.  Had

7    his job-protected leave been extended, Gardner's position would not have been eliminated,

8    and he could have fully returned to that position when he was released by his physician on

9    August 30, 2013.

10         FedEx argues that Gardner cannot establish a prima facie case.  First, FedEx

11   contends that Gardner was not "qualified" to do his job when he was displaced, because he

12   could not perform all of the essential functions of a Ramp Transport Driver ("RTD").

13   Specifically, Gardner's Work Status Report stated that he could not do any commercial

14   driving as of May 21, 2013.  Ex. 108 to Matheis Decl. (Docket No. 37-4).  Second, FedEx

15   notes that Gardner was not disabled when he was terminated, because he had fully

16   recovered from his injuries.  Third, FedEx argues that there is no evidence of

17   discriminatory intent in the decisions to displace and terminate Gardner.

18         FedEx further argues that even if Gardner could establish a prima facie case, FedEx

19   had legitimate, non-discriminatory reasons for its employment decisions.  In May 2013,

20   FedEx underwent a major reorganization of Air, Ground, and Freight Services operations

21   in response to a downturn in business.  Van Galder Dep. at 11:8-12:20, 13:3-17:5, 19:12-

22   19, 21:23-22:7, 61:17-62:6.  Eight full-time RTDs were transferred into Gardner's former

23   department from another operation.  *Id.* at 17:10-19:2, 20-24, 20:5-21:22, 39:14-21.

24   Consequently, in early June 2013, after Gardner had been displaced but while he was still

25   on leave, Senior Manager Ron Fraser decided not to replace the now "vacant" positions of

26   displaced employees.  Fraser Dep. at 44:21-45:13.  On June 10, 2013, Managing Director

27   Robin Van Galder sent an e-mail recapping Fraser's decision; it read in part: "We have

28   four employees that have been out for an excess of 90 Days.  We are not going to replace

United States District Court
Northern District of California

7

these employees." Ex. D to Shukla Decl.  FedEx argues that reducing staffing levels and headcount to save money is a legitimate, nondiscriminatory reason for displacing Gardner and eliminating his position.

## C.    Analysis

As a preliminary matter, Gardner alleges four adverse employment actions: his displacement, the elimination of his former position, FedEx's failure to place him into his former position when he returned from medical leave, and the termination of his employment.  Pl.'s Reply at 4.  "An adverse employment action must materially affect the terms, conditions, or privileges of employment." *Kranson v. Fed Exp. Corp.*, No. 11-05826-YGR, 2012 WL 4715337, at *8 (N.D. Cal. Oct 1, 2012) (internal quotation marks and citations omitted).  All of these events qualify as adverse employment actions.  For clarity of analysis, however, the Court will focus only on the most pertinent adverse employment action to the resolution of the summary judgment motion on each claim.

The Court identifies two principle triable issues of fact that preclude summary judgment on this cause of action.  The Court finds a triable issue of fact whether Gardner was "qualified" to perform the essential functions of his position, with or without reasonable accommodation, as of the time of his displace on May 22, 2013, and whether FedEx's actions were "because of" his disability.

### 1.    There is a triable issue of fact whether Gardner was "qualified."

There is no dispute that when Gardner was displaced on May 22, 2013, he was disabled and unable to return to full work duty.  However, there is a triable issue as to whether Gardner was "qualified" (meaning he could do his job with or without a reasonable accommodation) at the time of his displacement. *See Avila*, 165 Cal. App. 4th at 1246 (plaintiff must have been qualified at time of adverse employment action to maintain discrimination claim).  Gardner claims that he was "qualified" at the time of displacement because he could have done his job with the reasonable accommodation of

8

extended job-protected leave.  "Where a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA."[1]  *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135-35, 1139 (9th Cir. 2001); *see also Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000) ("Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future.").

Based on the evidence presented, a reasonable jury could find that FedEx should have known that Gardner could return in the foreseeable future, making an extension of job-protected leave a reasonable accommodation that would have rendered Gardner "qualified."  *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999) ("[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties.").  Giving rise to this triable issue of fact, Gardner's May 21, 2013 Work Status Report provided that Gardner could return to modified work duty, a restricted discharge that was expected to last 15 days.  Ex. 108 to Matheis Decl. (Docket No. 37-4).  This is significant for two reasons: (1) it raises the possibility that a reasonable accommodation could have been made for Gardner to return to work immediately; and (2) the restricted release may have suggested that Gardner's full release was approaching.

However, the Report also stated that Gardner could not lift more than 10 pounds and could not do any commercial driving.  *Id.*  Additionally, the Work Status Report noted that Gardner's condition had worsened since his last evaluation, *id.*, allowing a reasonable jury to find that Gardner's return was not foreseeable, and that extended job protection would have been an unreasonable accommodation under those circumstances.  *See Jensen*,

---

[1] ADA jurisprudence is instructive in FEHA cases.  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.").

85 Cal. App. 4th at 263 (providing that extended job-protected leave is a reasonable accommodation where "it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future").

### 2. There is a triable issue of fact whether the adverse employment actions were "because of" Gardner's disability.

There is also a triable issue of fact regarding FedEx's motivation for displacing Gardner.  FedEx claims that it displaced Gardner and eliminated his former position pursuant to Policy 1-8 because of the company's need for a workforce reduction.  Def.'s Mot. at 10 (citing *Tomlinson v. Qualcomm*, 97 Cal. App. 4th 934, 940 (2002) ("the guarantee of reinstatement to the same or comparable position does not preclude an employer from terminating the employee's employment as part of a work force reduction")).  However, evidence in the record suggests that the administrator that made the decision to displace Gardner did so without contacting Gardner's managers or any other individuals in the position to assess the operational needs of the RTD division at the Oakland operation.  Ex. F to Shuckla Decl. (Docket No. 48-1) (providing HCMP call logs that do not include communications with RTD division management).  This fact suggests that the workforce reduction was pretextual.

Insofar as the adverse employment action was the elimination of Gardner's former position, there is a triable issue of fact whether the elimination was due to the legitimate nondiscriminatory reason of a workforce reduction or because of Gardner's disability. While Defendant claims the position was eliminated as part of a reduction in force resulting from a major reorganization that occurred in May 2013, Managing Director Van Galder testified that the decision to eliminate Gardner's position was not related to the May 2013 reorganization.  Ex. A to Shuckla Decl. at 76:12-25 (Docket No. 48-1).

Finally, regarding the adverse employment action of Gardner's termination, there is a triable issue of fact whether Gardner's disability was a motivating factor.  Gardner argues that his position would not have been eliminated, and therefore his job not terminated, if not for the leave and displacement resulting from his disability.  This is

1    enough of a causal link for the issue to be presented to a jury.  *See Norris v. Allied-Sysco*

2    *Food Services, Inc.*, 948 F.Supp. 1418, 1434 (N.D. Cal. 1996) (where employer stated in

3    writing that reason it terminated plaintiff was her continuing unavailability for work and

4    reasonable jury could have concluded she was unavailable for work because of her

5    disability, a triable issue existed regarding whether plaintiff's disability was a motivating

6    factor in employer's decision to terminate her).

7        Because there are triable issues of fact regarding Plaintiff's disparate treatment

8    claim, the cross-motions for summary judgment on this cause of action are DENIED.

9

10   **II.   Second Cause of Action: Disability Discrimination (Disparate Impact)**

11       The Parties also filed cross-motions for summary judgment on Gardner's claim of

12   disparate impact disability discrimination.

13       In addition to disparate treatment, FEHA also prohibits disparate impact disability

14   discrimination resulting from facially neutral employment practices or polices that have a

15   disproportionate effect on employees suffering from a disability.  *Avila*, 165 Cal. App. 4th

16   at 1246.  "The requirements of a prima facie disparate impact case . . . are in some respects

17   more exacting than those of a disparate treatment case."  *Garcia v. Spun Steak Co.*, 998

18   F.2d 1480, 1486 (9th Cir. 1993).  Plaintiffs "must do more than merely raise an inference

19   of discrimination before the burden shifts; they must actually prove the discriminatory

20   impact at issue."  *Id.*  "The plaintiff may not merely assert that the policy has harmed

21   members of the group to which he or she belongs.  Instead, the plaintiff must prove the

22   existence of adverse effects of the policy, must prove that the impact of the policy is on

23   terms, conditions, or privileges of employment of the protected class, must prove that the

24   adverse effects are significant, and must prove that the employee population in general is

25   not affected by the policy to the same degree."  *Id.*

26       Gardner argues that Policy 1-8 allows for the displacement of disabled employees

27   on leave, making their positions (and therefore their employment) especially vulnerable to

28   elimination.  For support, Gardner asserts that all of the RTD positions eliminated during

United States District Court
Northern District of California

1    the June 2013 reduction in force had previously belonged to disabled, displaced

2    employees.  However, Gardner provided no data regarding the policy's impact on other

3    divisions at the Oakland operation, or at other FedEx facilities around the country.  At oral

4    argument, while Defendant was unable to rebut Gardner's claim about the eliminated RTD

5    positions at the Oakland facility, Defendant correctly noted that the necessary data is

6    simply not available.[2]  Herein lies the problem with Gardner's disparate impact claim:

7    Gardner has not provided any statistical evidence comparing the impact of Policy 1-8 on

8    disabled employees to its impact on the general employee population.  Absent this

9    evidence, Gardner cannot prevail on a disparate impact claim.  *See* Garcia, 998 F.2d at

10    1486 (plaintiff "must actually prove the discriminatory impact," which often requires

11    "quantifiable data").  For this reason, the Court inquired at oral argument into the

12    likelihood that the necessary evidence will be made available before trial; it was clear from

13    the Parties' responses that it will not.

14           The discovery deadline, as well as the time for dispositive motions, has now passed.

15    While the Court is skeptical of Defendant's claim that it would take 800 work-hours to

16    gather the relevant data, Gardner should have taken the steps necessary to compel the

17    evidence needed to support his disparate impact claim and provided it in the present

18    motion.  Because Gardner has failed to establish a genuine dispute of material fact on this

19    cause of action, the Court hereby GRANTS Defendant's motion for summary adjudication

20    of Gardner's disparate impact claim.

21    //

22    //

23    //

24

25    [2] Additionally, FedEx provided evidence that suggests that Policy 1-8 did not adversely

26    impact some similarly situated, injured RTD drivers.  Def.'s Reply at 6.  When RTD
Henry Jordan returned from medical leave he was placed into an available full-time RTD

27    position. Ex E to Matheis Decl. at 22:2-17 (Docket No. 37-1); Ex. 111 to Matheis Decl.
(Docket No. 37-4).  Similarly, when RTD David Low returned from medical leave, he was

28    placed into the full-time RTD position from which he was never displaced, despite
exceeding the 90-day limit.  Ex. C to Matheis Decl. at 82:2-16 (Docket No. 37-1).

**III.  Third Cause of Action: Failure to Provide a Reasonable Accommodation**

FedEx seeks summary adjudication of Gardner's claim of failure to provide a reasonable accommodation.  There is no cross-motion on this claim.

Under FEHA, employers have an affirmative duty to make reasonable accommodations for a known disability of an employee, provided the accommodation does not create an undue hardship to the employer's operations.  Cal. Gov't Code § 12940(m).  "Where a necessary accommodation is obvious . . . a plaintiff may sue under section 12940(m)."  *Nadaf–Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 983 (2008).  Employers who are aware of an employee's disability have an affirmative duty to make reasonable accommodations for such disability, even if the employee has not requested an accommodation.  2 CCR § 11068(a); *see Prilliman v. United Air Lines, Inc.*, 54 Cal. App. 4th 935, 954 (1997) (no requirement that a "disabled employee must first come forward and request a specific accommodation before the employer has a duty to investigate such accommodation").

To establish a prima facie case for failure to accommodate, a plaintiff must show: (1) that he suffers from a disability covered by FEHA; (2) that he is otherwise qualified to do his job; and (3) that defendant failed to reasonably accommodate his disability.  *Jensen*, 85 Cal. App. 4th at 256.  An employer's failure to provide reasonable accommodation is a violation of the statute even in the absence of an adverse employment action.  *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 442 (2007).

California courts have adopted the Equal Employment Opportunity Commission's interpretative guidance on the ADA, in which a reasonable accommodation means "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired."  *Scotch v. Art Institute of California Orange County, Inc.*, 173 Cal. App. 4th 986, 1010 (2009) (citing *Nadaf–Rahrov*, 166 Cal. App. 4th at 975-76).  An extension of job-protected leave can be a reasonable accommodation in some circumstances.  *Jensen*, 85 Cal. App. 4th at 263 ("Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable

1    accommodation and may be all that is required where it appears likely that the employee
2    will be able to return to an existing position at some time in the foreseeable future.").

3          Gardner contends that he should have been offered the reasonable accommodation
4    of an extension of job-protected leave on May 21, 2013.  Despite the expiration of his
5    FMLA leave, Gardner argues that FedEx was still under an obligation to consider
6    accommodating him in this manner.  Pl.'s Opp'n at 8.  FedEx, however, insists that
7    Gardner's return was not foreseeable, and that it was under no obligation to provide
8    indefinite leave as an accommodation.

9          A reasonable jury could find, based on what FedEx knew at the time of Gardner's
10   displacement, that additional time would have enabled Plaintiff to return to his existing
11   position within a foreseeable period.  Specifically, Gardner's May 21, 2013 Work Status
12   Report provided that he could return to modified work duty, which was expected to last 15
13   days. Ex. 108 to Matheis Decl. (Docket No. 37-4).  Gardner also told HCMP Advisor
14   Cline that he wanted to get a second opinion about his condition, suggesting that there was
15   a possibility that his prognosis was incorrect and his return more imminent.  Ex. F to
16   Shukla Decl. (Docket No. 48-1).

17         However, a reasonable jury could also find that Gardner's return was uncertain, and
18   that FedEx was under no obligation to provide indefinite job-protected leave to Gardner.
19   *See Norris*, 948 F. Supp. at 1438-39 ("if the employer does not know when the employee
20   will be able to return to duty, the employer is not required to grant an indefinite and
21   lengthy leave").  Here, the jury could rely on the fact that the Work Status Report left
22   blank the expected date for Gardner's return and noted that Gardner's status had worsened
23   since his last doctor's appointment.  Ex. 108 to Matheis Decl. (Docket No. 37-4).

24         Finally, it is not enough that FedEx extended Gardner's job-protected leave by a
25   few weeks to accommodate his May 21 doctor's appointment.  Despite a pattern of
26   successful accommodation, a single failure to accommodate an employee's disability may
27   be actionable.  *See A.M. v. Albertsons, LLC*, 178 Cal. App. 4th 455, 465 (2009) (failure to
28   accommodate was actionable where employer successfully accommodated employee's

United States District Court
Northern District of California

14

disability-based need for bathroom breaks for more than a year, but failed to do so on a single occasion causing serious mental and physical consequences).

Because there are triable issues of fact regarding Gardner's cause of action for failure to provide a reasonable accommodation, the Court DENIES FedEx's motion for summary adjudication of this claim.

## IV.   Fourth Cause of Action: Failure to Engage in an Interactive Process

FedEx also seeks summary adjudication of Gardner's claim for failure to engage in an interactive process.  There are no cross-motions on this cause of action.

FEHA makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with an employee to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability."  Cal. Gov't Code § 12940(n).  "[A]n employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy of offering such assistance or benefit to any other employees."  *Prilliman*, 53 Cal. App. 4th at 950–51.

In general, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  *Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384 (2000).  However, the burden is not entirely on the employee.  *Jensen*, 85 Cal. App. 4th at 261–62.  "Employees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have.  Putting the entire burden on the employee to identify a reasonable accommodation risks shutting out many workers simply because they do not have the superior knowledge of the workplace that the employer has."  *Id.* (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1102, 1113 (9th Cir. 2000)).  To that end, courts have held that "[t]he

United States District Court
Northern District of California

1    employee must initiate the process unless the disability and resulting limitations are

2    obvious." *Scotch*, 173 Cal. App. 4th at 1013.

3         Gardner claims that FedEx failed to make any effort to determine whether a

4    reasonable accommodation could be made for his disability.  Here, he points to the HCMP

5    call logs, which show that at the time of displacement, FedEx administrators never asked

6    about his expected return date or considered extending his job-protected leave.  *See* Ex. F

7    to Shuckla Decl. (Docket No. 48-1).  Conversely, FedEx argues that it is the employee's

8    obligation to trigger the interactive process by requesting an accommodation, and Gardner

9    never requested an extension of his job-protected leave.

10        FedEx is correct that the duty to engage in the interactive process is generally

11   "triggered upon notification of the disability and the desire for accommodation."  *Vinson v.*

12   *Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (citations omitted).  However, FedEx and

13   other employers are obligated to initiate the interactive process when they are aware that

14   an employee's California Family Rights Act (CFRA) leave has exhausted, "yet the

15   employee or the employee's health care provider indicated that further accommodation is

16   still necessary for recuperative leave or other accommodation for the employee to perform

17   the essential functions of the job."  2 CCR § 11069.0(b)(3); *see also Scotch*, 173 Cal. App.

18   4th at 1013 ("The employee must initiate the process unless the disability and resulting

19   limitations are obvious.").  Here, Gardner's Work Status Report indicated that he could

20   return to work on modified duty, potentially indicating the need for an accommodation.  If

21   FedEx needed some clarification of the information it received from Gardner or his

22   physician, it was obligated to "identify the issues that need clarification, specify what

23   further information is needed, and allow the applicant or employee a reasonable time to

24   produce supplemental information."  2 CCR § 11069.0(c)(4).

25        Nonetheless, there does appear to have been some interactive process between

26   Gardner and FedEx, as FedEx initially extended Gardner's job-protected leave from May 7

27   to May 21, 2013, to allow for his doctor's appointment.  McMaster Dep. at 45:24-46:20,

28   77:3-13.  However, this interactive process appears to have broken down at the time of

United States District Court
Northern District of California

Gardner's displacement, and a reasonable jury could find either party liable. While Gardner would generally have been required to identify and request the accommodation of job-protected leave, his obvious disability combined with the Work Status Report may have been enough to impart an obligation on FedEx to request additional clarification about possible accommodations and an expected return date. However, these are questions for a jury to decide.

Accordingly, the Court DENIES FedEx's motion for summary adjudication of Gardner's claim for failure to engage in an interactive process.

## V.   Fifth Cause of Action: Retaliation

FedEx seeks summary adjudication of Gardner's claim for retaliation. There are no cross-motions on this cause of action.

A plaintiff can establish a prima facie case of retaliation in violation of the CFRA by showing the following: (1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his right to take a qualifying leave; and (4) the plaintiff suffered an adverse employment action because he exercised the right to take CFRA leave. *Rogers v. County of Los Angeles*, 198 Cal. App. 4th 480, 491, (2011).

There is no dispute between the Parties that FedEx was a covered employer, that Gardner was eligible for CFRA leave, and that Gardner exercised his right to take qualified leave. However, Gardner claims that he was retaliated against "for requesting and taking medical leave and for requiring an accommodation for his disability or otherwise exercising his FEHA rights." Compl. ¶ 46. The adverse employment actions alleged are his displacement, the elimination of his position, and his eventual termination. *Id.* Gardner additionally claims that after he filed an Equal Employment Opportunity (EEO) complaint, FedEx failed to send him certain job notices, as required by company policy.[3]

---

[3] The Court notes that this allegation is not explicitly included in the Complaint. However, the Complaint does allege retaliation for "otherwise exercising his FEHA rights." Compl. ¶ 46.

United States District Court
Northern District of California

1    Pl.'s Opp'n at 19 (citing Van Galder Dep. at 56-58 (Docket No. 48-1) (discussing EEO

2    complaint)).

3           FedEx argues that Gardner's displacement was legal because his CFRA-protected

4    leave had expired.  It further contends that the elimination of Gardner's former position

5    was due to a workforce reduction, and not Gardner's disability.  Finally, FedEx claims that

6    it sent Gardner the job notices, and that a failure to have done so would have been

7    harmless because the individuals hired for those positions shared Gardner's preferential

8    status but enjoyed greater seniority.  Def.'s Reply at 7.  Furthermore, FedEx notes that

9    Gardner filed his complaint in September 2013, but was not terminated until February 17,

10   2014, "after 167 days of personal leave without accepting one of the five jobs FedEx

11   offered or finding a different one."  *Id.* (citing Ex. 45 to Matheis Decl. (Docket No. 37-4)).

12          There is a triable issue of fact regarding whether Gardner's displacement and

13   termination occurred "because" he exercised his right to CRFA leave, as explored in the

14   sections above.  Additionally, there is a triable issue of fact whether FedEx sent the job

15   notices that Gardner claims he did not receive.

16          Accordingly, the Court DENIES FedEx's motion for summary adjudication of

17   Gardner's retaliation claim.

18

19   **VI.  Sixth Cause of Action: Failure to Prevent Discrimination**

20          FedEx seeks summary adjudication of Gardner's claim for failure to prevent

21   discrimination.  There are no cross-motions on this cause of action.

22          Under FEHA, it is an unlawful employment practice for an employer "to fail to take

23   all reasonable steps necessary to prevent discrimination and harassment from occurring."

24   Cal. Gov't Code § 12940(k).  Because a claim for failure to prevent discrimination is

25   predicated on the existence of discrimination, a question this Court has determined should

26   be submitted to a jury, it follows that this claim should also be submitted to a jury.  S*ee*

27   *Kranson v. Fed. Exp. Corp.*, No. 11-05826-YGR, 2012 WL 4715337, at *13 (N.D. Cal.

28

United States District Court
Northern District of California

18

Oct. 1, 2012) (denying summary judgment on failure to prevent discrimination because of denial of summary judgment on discrimination claim).

## VII. Seventh Cause of Action: Wrongful Termination in Violation of Public Policy

FedEx seeks summary adjudication of Gardner's claim for wrongful termination. There are no cross-motions on this cause of action.

The elements of a wrongful discharge in violation of public policy are: (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination of the plaintiff's employment was in violation of public policy; (4) the termination was a legal cause of the plaintiff's damages; and (5) damages. *Johnson v. Hertz Local Edition Corp.*, No. 03-4439-MJJ, 2004 WL 2496164, at *5 (N.D. Cal. Nov. 3, 2004).

Gardner's wrongful termination claim cannot proceed without a viable discrimination claim. *See Johnson*, 2004 WL 2496164, at *5 (summary judgment of wrongful termination claim proper where plaintiff failed to demonstrate a prima facie case of discrimination). Because Gardner's wrongful termination claim is predicated on the existence of discrimination, which is a triable issue of fact as discussed above, it follows that this claim must be submitted to a jury. *See Kranson*, 2012 WL 4715337, at *14 (finding the same). FedEx's motion for summary adjudication of this cause of action is therefore DENIED.

## VIII.  Eighth Cause of Action: Violation of California's Unfair Competition Law

FedEx seeks summary adjudication of Gardner's claim for unfair business practices under California's Unfair Competition Law (UCL). There are no cross-motions on this cause of action.

California's UCL prohibits unlawful, unfair, or fraudulent business acts or practices. California Bus. & Prof. Code § 17200. To state a claim for unlawful or unfair business practices based upon a discrimination claim, a plaintiff is required to establish a

19

viable discrimination claim.  *Johnson*, 2004 WL 2496164, at *5.  The success of FedEx's motion for summary adjudication of Gardner's UCL claim therefore relies upon a grant of its motion for summary adjudication of Gardner's discrimination claim.  Because the Court finds that the discrimination claim must be decided by a jury, FedEx's motion for summary adjudication of this cause of action is DENIED.

## IX.  Ninth Cause of Action: Request for Declaratory Relief

The Parties filed cross-motions for summary judgment on Gardner's request for declaratory relief.  Gardner asks the Court to find that Policy 1-8 "is illegal and unenforceable under California law."  Compl. at 15:24-2).  Specifically, Gardner argues that the policy is unlawful "because it allows managers either to replace the position of an employee on medical leave or to allow the position to remain unfilled at the end of 90 days or the expiration of the employee's FMLA leave in violation of California law under the FEHA."  *Id.* ¶ 74.  In essence, Gardner contends that the policy allows FedEx management to displace disabled employees and eliminate their positions without engaging in an interactive process to determine whether a reasonable accommodation can be made.

Conversely, FedEx argues that because the CFRA only requires 12 weeks of medical leave, Policy 1-8, which provides an even longer leave period, complies with the law.  Def.'s Mot. at 14 (citing Cal. Gov. Code. § 12945.2(a)).  FedEx also notes that Policy 1-8 is "permissive and does not require that any specific action be taken, thereby permitting conduct consistent with FEHA."  *Id.*

The declaratory relief statute, 28 U.S.C. § 2201, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity,

and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984).

On its face, Policy 1-8 does not prohibit managers from engaging in an interactive process to identify a reasonable accommodation for disabled or injured employees. Consequently, while perhaps imprudent, the policy is not *per se* illegal. This fact is demonstrated by the evidence, as FedEx provided the reasonable accommodation of extending job-protected leave for two other RTD employees that had exhausted their Policy 1-8 leave period. The first of these employees was Gardner himself, as FedEx initially extended his job-protected leave from May 7 to May 21, 2013, to allow for an official evaluation by his physician. McMaster Dep. at 45:24-46:20, 77:3-13. Similarly, FedEx extended the job-protected leave of RTD Robert Low for 33 days after his doctor's appointment was postponed multiple times. Ex. C to Matheis Decl. at 81-82 (Docket No. 37-1); Ex. 100 to Matheis Decl. (Docket No. 37-4) (showing Low received 123 days of job-protected leave). When Low was finally able to see his doctor on August 20, 2013, he was released to return to work as of September 3, so his job-protected leave was again extended to that date. Ex. C to Matheis Decl. at 79:17-81:9. When Low returned, he was reinstated to his previous position because he had never been displaced - despite the application of Policy 1-8. *Id.* at 82:2-16.

Consequently, while Policy 1-8 is susceptible to discriminatory use by FedEx administrators because it does not explicitly require an interactive process, it also does not prohibit such a process. Instead, the displacement of employees that have exhausted their 90-day leave period is purely discretionary. Furthermore, the leave provided by the Policy exceeds the 12-week leave requirement provided by CFRA and FMLA. For these reasons, the Policy is not *per se* illegal under California law. Accordingly, FedEx's motion for summary adjudication of Gardner's request for declaratory relief is GRANTED.

//

//

//

21

**CONCLUSION**

     For the foregoing reasons, the Court hereby GRANTS FedEx's motion for summary adjudication of Gardner's disparate impact and declaratory relief claims.  All other requests for summary judgment and adjudication are hereby DENIED.

**IT IS SO ORDERED.**

Dated:   07/10/15

THELTON E. HENDERSON
United States District Judge