UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT GARDNER,

    Plaintiff,

v.

FEDERAL EXPRESS CORPORATION,

    Defendant.

Case No. 14-cv-01082-TEH

**ORDER DENYING MOTION FOR NEW TRIAL**

This matter came before the Court on March 28, 2016 for a hearing on Plaintiff Robert Gardner's Motion for a New Trial. Dkt. No. 113. Defendant Federal Express Corporation ("FedEx") timely opposed the motion. Dkt. No. 118. After carefully considering the parties' written and oral arguments, the Court hereby DENIES Plaintiff's motion, for the reasons set forth below.

**BACKGROUND**

As the parties are by now familiar with the factual background of this case, the Court provides only a brief summary. Plaintiff Robert Gardner was a full-time Ramp Transport Driver at Defendant FedEx's Oakland yard facility when he suffered an injury in January 2013. As a result, FedEx placed Gardner on job-protected medical leave. In May 2013, Gardner was notified that this leave had exhausted and that he had been "displaced" pursuant to FedEx policy. Though Gardner remained a FedEx employee and continued on paid medical leave, displacement meant that his position in Oakland was no longer protected. In September 2013, Gardner was transitioned to an unpaid leave of absence, during which time he could look for another position within FedEx. Over a period of months, Gardner turned down several job opportunities within FedEx that he deemed too dissimilar from his former full-time work. In February 2014, FedEx terminated Gardner's employment because he had been unable to find another position within the company.

Trial in this matter began on October 13, 2015. Dkt. No. 93. Gardner pursued the following claims: (1) Disability Discrimination; (2) Failure to Engage in the Interactive Process; (3) Failure to Provide Reasonable Accommodation; (4) Retaliation; (5) Failure to Prevent Discrimination or Retaliation; and (6) Wrongful Discharge in Violation of Public Policy. Verdict Form (Dkt. No. 106). On October 22, 2015, the jury returned a unanimous verdict for FedEx on all six claims. *Id.* Gardner now moves for a new trial on the first and fourth claims, based on a perceived mistake in the jury's special verdicts on those claims. Pl.'s Mot. for a New Trial ("Mot.") at 2 (Dkt. No. 113).

On the first claim for Disability Discrimination, the verdict form[1] included six questions:

1. Did Robert Gardner have a physical condition that limited a major life activity?
2. Did FedEx know that Mr. Gardner had a physical condition that limited a major life activity?
3. Was Mr. Gardner able to perform the essential job duties of the Ramp Transport Driver position with or without accommodation?
4. Did FedEx subject Mr. Gardner to an adverse employment action?
5. Was Robert Gardner's physical condition a substantial motivating reason for FedEx's decision to subject Mr. Gardner to an adverse employment action?
6. Was FedEx's conduct a substantial factor in causing harm to Mr. Gardner?

Verdict Form at 2-3. The jury was instructed to answer the questions in order, and that if it answered any question in the negative, to not answer any of the remaining questions for that claim. The jury answered the first three questions in the affirmative; the fourth question in the negative; and, as instructed, did not answer the final two questions. *Id.*

On the fourth claim for Retaliation, the verdict form included four questions:

1. Did Robert Gardner take medical leave?
2. Did FedEx subject Robert Gardner to an adverse employment action?

---

[1] The jury was provided a special verdict form that the parties had agreed upon in advance of the trial. Dkt. No. 68.

     3. Was Robert Gardner's medical leave a substantial motivating reason for FedEx's decision to subject Robert Gardner to an adverse employment action?

     4. Was FedEx's conduct a substantial factor in causing harm to Robert Gardner?

*Id.* at 8. The jury answered the first question in the affirmative; the second question in the negative; and, as instructed, did not answer the final two questions. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 59 provides that after a jury trial, "[t]he court may, on motion, grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . " Fed. R. Civ. Pro. 59(a). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

When the movant claims that a verdict was against the clear weight of the evidence at trial, a new trial should be granted "[i]f, having given full respect to the jury's findings, the judge . . . is left with the definite and firm conviction that a mistake has been committed." *Landes Const. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2806, at 48-49 (1973)). In the Ninth Circuit, denial of a new trial is "an error in law" if there is an "absolute absence of evidence to support the jury's verdict." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Urti v. Transp. Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973)).

## DISCUSSION

Gardner seeks a new trial on the grounds that the jury's negative responses to the "adverse employment action" questions – the fourth question of the first claim and the

3

1 second question of the fourth claim – were "directly contrary to the instructions given by
2 this Court regarding undisputed facts." Mot. at 1.
3      FedEx first argues that neither Gardner's displacement nor his termination were
4 adverse employment actions to which FedEx *subjected* Gardner, as required by the
5 relevant instruction.[2] Def.'s Opp'n to Pl.'s Mot. for a New Trial ("Opp'n") at 3-5 (Dkt.
6 No. 118). This argument is unavailing, however, because it was undisputed at trial that
7 FedEx displaced Gardner and then terminated his employment, and it was likewise
8 undisputed that both of these actions constitute "adverse employment actions" under
9 applicable state law. Indeed, FedEx made the following statement during closing
10 argument:

> [Gardner] has to prove that FedEx subjected [him] to an adverse employment action. All right. I believe there were five or six identified, and to understand those, we have to go to the definition of an adverse employment action, but I don't think we need to spend a lot of time on whether being eliminated – I'm sorry – displaced, put on a personal leave, and ultimately terminated – those are all adverse employment actions. I'm not going to argue against that.

15 Tr. Def. Closing Appearances at 27-28 (attached hereto as Ex. A). By FedEx's own
16 admission, it is therefore evident that the jury erred in finding, on the first and fourth
17 claims, that FedEx had not subjected Gardner to an adverse employment action.
18      The thrust of this motion, then, is whether this mistake requires a new trial on either
19 claim. If the jury had correctly answered the adverse employment action questions in the
20 affirmative, then two questions remained to be answered on both the first and fourth
21 claims. But because the jury incorrectly answered the adverse employment action

---

[2] The Court instructed the jury on the meaning of "adverse employment action" as follows: "Robert Gardner must prove that he was subjected to an adverse employment action. Adverse employment actions are not limited to ultimate actions such as termination or demotion. There is an adverse employment action if FedEx took an action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Robert Gardner's employment. An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion. However, minor or trivial actions or conduct that is not reasonably likely to do more than anger or upset an employee cannot constitute an adverse employment action." Jury Instructions at 19 (Dkt. No. 105); *see also* CACI Civ. Jury Instruction No. 2509.

4

1  questions in the negative on both claims, it did not reach the two remaining questions on
2  either claim. The Court must therefore decide whether a new trial is warranted to
3  determine how the jury would have answered the remaining questions on each claim.

4        FedEx argues that a new trial is not warranted because "[i]t is the duty of the courts
5  to attempt to harmonize the [jury's findings] if it is possible under a fair reading of them."
6  Opp'n at 6. FedEx argues that in this case, the Court can harmonize the jury's incorrect
7  responses to the adverse employment action questions with the jury's across-the-board
8  finding of "no unlawful conduct and no liability," because the Court need not guess at how
9  the jury would have completed the verdict form on the first and fourth claims. *Id.* This is
10 so, FedEx argues, because the question following the adverse employment action question
11 on both claims is substantially similar to a question the jury *did answer*, in the negative, on
12 the sixth claim. *Id.*

13       Gardner's sixth claim for Wrongful Discharge in Violation of Public Policy asked
14 the jury four questions:

    1. Was Robert Gardner employed by FedEx?

    2. Did FedEx discharge Mr. Gardner?

    3. Was Mr. Gardner's disability or medical leave a substantial motivating reason for Mr. Gardner's discharge?

    4. Was the discharge a substantial factor in causing harm to Mr. Gardner?

20 Verdict Form at 10. The jury answered the first two questions in the affirmative; the third
21 question in the negative; and, as instructed, did not answer the final question. *Id.*
22       The third question on this sixth claim – "Was Mr. Gardner's disability or medical
23 leave a substantial motivating reason for Mr. Gardner's discharge?" – is certainly
24 substantially similar to the first unanswered question on both the first claim – "Was Robert
25 Gardner's physical condition a substantial motivating reason for FedEx's decision to
26 subject Mr. Gardner to an adverse employment action?" – and fourth claim – "Was Robert
27 Gardner's medical leave a substantial motivating reason for FedEx's decision to subject
28 Robert Gardner to an adverse employment action?" *Id.* at 3, 8, 10. Because the jury

5

1 answered this "substantial motivating reason" question in the negative on the sixth claim,
2 FedEx argues that "[v]iewed as a whole, it is clear that, even had the jury answered the
3 'adverse employment action' questions in the affirmative for the first and fourth claims,
4 the jury still would have found against Gardner by answering the next-following
5 'substantial motivating reason' questions for those same claims in the negative, resulting in
6 the same verdict in favor of FedEx." Opp'n at 2.

7 FedEx is correct that when "there is a view of the case that makes the jury's
8 answers to special interrogatories consistent, they must be resolved that way," which
9 means that courts "must attempt to reconcile the jury's findings, by exegesis if necessary
10 . . . before [they] are free to disregard the jury's special verdict . . . ." *Gallick v. Balt. &*
11 *Ohio R.R. Co.*, 372 U.S. 108, 119 (1963) (citations omitted). The cases initially cited by
12 FedEx, however, dealt with *inconsistent findings*, rather than *incomplete verdicts*, and
13 therefore did not directly address the situation described above. As such, the Court
14 ordered supplemental briefing from the parties on "whether it is appropriate for a court to
15 reach questions that the jury never reached," including "the propriety of looking to [] the
16 jury's answers to other, similar questions." Dkt. No. 132.

17 Having reviewed the parties' supplemental authorities, the Court is now convinced
18 that a new trial is not warranted under these circumstances. It is certainly true that "where
19 a special verdict resolves several issues in a case but fails to resolve a 'distinct and
20 separable' issue, the proper course of action is to order retrial of the unresolved issue."
21 *Waters v. Howard Sommers Towing, Inc.*, No. CV 10-5296 CAS (PJWx), 2013 WL
22 2237684, at *2 (C.D. Cal. May 21, 2013). But here, the questions whether Gardner's
23 physical condition (on the first claim) or medical leave (on the fourth claim) were "a
24 substantial motivating reason for FedEx's decision to subject [] Gardner to an adverse
25 employment action" are neither distinct nor separable from the question whether
26 "Gardner's disability or medical leave [was] a substantial motivating reason for []
27 Gardner's discharge" on the sixth claim. Verdict Form at 3, 8, 10. The former questions
28 are not "logically independent from the [] factual and legal issues resolved by" the latter

6

1    question. *Waters*, 2013 WL 2237684, at *2. Rather, these unanswered questions are

2    nearly identical – factually, legally, and logically – to the question already answered by the

3    jury on the sixth claim. This sixth claim encompassed both disability (i.e., the first claim)

4    and medical leave (i.e., the fourth claim),[3] and the jury was provided only one instruction

5    on "substantial motivating reason" that applied to all three claims.[4] Because the jury

6    answered the "substantial motivating reason" question in the negative on the sixth claim,

7    as to both Gardner's disability and medical leave, the Court can therefore be sure that the

8    jury would have likewise answered that question in the negative on the first and fourth

9    claims, consistent with its finding of no liability on those claims.

10         To conclude that the jury may have answered the "substantial motivating reason"

11   questions differently on the first and fourth claims than it did on the sixth claim would be

12   to create an inconsistency where none currently exists. *See Skyway Aviation Corp. v.*

13   *Minneapolis Northfield and S. Ry. Co.*, 326 F.2d 701, 704 (8th Cir. 1964) ("The failure to

14   agree on the unanswered interrogatory did not vitiate the otherwise unanimous verdict

15   effectively disposing of the issues submitted."); *see also id.* (finding that jury's failure to

16   agree on whether plaintiff had been negligent did not vitiate otherwise unanimous special

17   verdict for plaintiff, given jury's finding that plaintiff's negligence, if any, was not the

18   proximate cause of an accident). Moreover, this finding is consistent with the law's

19   respect for the jury's role as fact-finder. *See, e.g.*, *Gallick*, 372 U.S. at 113 ("We think that

---

[3] The Court has heard and rejects Gardner's argument that the first claim includes discrimination based on "history of a physical condition," while the sixth claims includes only "actual physical condition." Pl.'s Reply in Supp. of Mot. for a New Trial at 6 (Dkt. No. 125). The instruction on the sixth claim stated that "it is a violation of public policy to discriminate against an individual because of his disability" and included "Gardner's physical condition" in defining the elements of the claim; meanwhile, the introductory instruction on discrimination stated that "it is an unlawful employment practice for an employer to discriminate against an employee based on a disability or history of a disability." Jury Instructions at 14, 48. The jury was therefore instructed that "disability" as used in the special verdict form on the sixth claim included history of a disability.

[4] The Court instructed the jury on the meaning of "substantial motivating reason" as follows: "A 'substantial motivating reason' is a reason that actually contributed to the adverse employment action. It must be more than a remote or trivial reason. It does not have to be the only reason motivating the adverse employment action." Jury Instructions at 20; *see also* CACI Civ. Jury Instruction No. 2507.

1   the Court of Appeals improperly invaded the function and province of the jury . . . ."); *Landes*, 833 F.2d at 1371 ("[A] decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter.").

The cases cited by Gardner do not affect this conclusion. Those cases dealt with drastically different circumstances, such as where a jury deadlocks or otherwise fails to answer an interrogatory without explanation. *See Union Pac. R.R. Co. v. Bridal Veil Lumber Co.*, 219 F.2d 825, 832 (9th Cir. 1955) ("To do other than send the case back for a new trial when decision on a vital issue by the jury is missing would deprive the parties of the jury trial to which they are entitled constitutionally."); *California v. Altus Fin. S.A.*, 540 F.3d 992, 1005 (9th Cir. 2008) ("If the answered verdict forms do not dispose of all the issues submitted to the jury, the court must either resubmit the unanswered verdicts to the same jury or declare a mistrial with respect to the unresolved issues."). Though a new trial may be warranted in such cases, here, there was no deadlock, no unexplained empty interrogatories, and therefore no "missing decision on a vital issue." Rather, the special verdict form in this case *did* "dispose of all the issues submitted to the jury." The only reason the jury left questions unanswered on the first and fourth claims was because it had already reached a finding of no liability on those claims that, albeit reached incorrectly, is consistent with every other answer the jury provided that day.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a new trial is hereby DENIED.

**IT IS SO ORDERED.**

Dated: 04/18/16                    _____
                                   THELTON E. HENDERSON
                                   United States District Judge

8